UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

BARBARA HOLLEMAN,                           )
                                            )
          Plaintiff,                        )
                                            )
v.                                          )    No.:   3:09-CV-311
                                            )           (VARLAN/GUYTON)
BELLSOUTH TELECOMMUNICATIONS, INC., )
                                            )
          Defendant.                        )

## MEMORANDUM OPINION

This civil action is before the Court on the Motion for Summary Judgment [Doc. 32],

brought by defendant BellSouth Telecommunications, Inc. ("BellSouth"), as to all claims of

plaintiff, Barbara Holleman. Plaintiff has responded in opposition [Doc. 16]. BellSouth has

filed a supplemental statement of material facts [Doc. 31], to which plaintiff has filed a

response [Doc. 34], and BellSouth has filed a reply [Doc. 35]. For the reasons set forth

herein, the Court finds that BellSouth is entitled to judgment as a matter of law for all

plaintiff's claims. Accordingly, BellSouth's motion for summary judgment will be granted

in full, and plaintiff's claims will be dismissed.

This is an employment discrimination case in which plaintiff asserts that BellSouth,

her former employer, committed violations of the Americans with Disabilities Act ("ADA"),

42 U.S.C. §§ 12101, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. §§ 621, *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§§ 2000e, *et seq.* [Doc. 12]. In the instant motion [Doc. 15], BellSouth argues that plaintiff

has failed to establish a prima facie case for any of her claims and that, pursuant to Rule 56 of the Federal Rules of Civil Procedure, BellSouth is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. Assuming plaintiff establishes a prima facie case of discrimination as to any claim, BellSouth asserts that plaintiff's ADA claim is time-barred, that it has articulated a legitimate, nondiscriminatory reason for plaintiff's termination, and plaintiff has not shown that this reason was pretext for unlawful discrimination. Plaintiff responds that she has established a prima facie case as to each of her claims, that her ADA claim is not time-barred, and that BellSouth's reason for her termination was pretextual.

## I.      BellSouth's Motion to Strike Plaintiff's Affidavit

Prior to filing the instant motion for summary judgment, BellSouth took plaintiff's deposition ("initial deposition") [Doc. 15-3]. At her initial deposition, plaintiff could recall very few details of the allegations in her amended complaint of discriminatory treatment by BellSouth and its employees. BellSouth filed the instant motion for summary judgment, referencing, throughout the motion and memorandum in support, plaintiff's statements during her initial deposition and her inability to remember or describe her allegations in the amended complaint.

In response to BellSouth's motion for summary judgment, plaintiff filed a response and two supporting affidavits, one by plaintiff's physician, Susan C. Koller, Ph.D. [Doc. 16-3], and one by plaintiff [Doc. 16-4]. In Dr. Koller's affidavit, she states that the reason plaintiff could not recall any of the alleged discriminatory treatment at her initial deposition was due to plaintiff's "history of depression and social phobia and the context [in which] she

2

was required to present her information" [Doc. 16-3, ¶ 12].[1]  In plaintiff's affidavit, in a high level of detail as contrasted with plaintiff's previous inability to recall the alleged discriminatory treatment, she alleges approximately fifty-two instances, over a nine-year period, of discriminatory treatment by BellSouth and its employees [Doc. 16-4].  Plaintiff asserts that she was able to provide these detailed allegations in her affidavit and not at her initial deposition because she had resumed therapy with Dr. Koller and because she had "reviewed documents . . . which I took during my employment[.]" [*Id.*, ¶ 4].

BellSouth filed a motion to strike plaintiff's affidavit or, alternatively, allow BellSouth to conduct additional discovery on plaintiff's allegations [Doc. 19].  The Court denied BellSouth's motion to strike, but ordered plaintiff to sit for a second deposition and produce notes to BellSouth from the time of her employment [Doc. 30].  The Court also ordered that BellSouth be permitted to amend and supplement its motion for summary judgment [*Id.*].  BellSouth conducted a second deposition of plaintiff ("second deposition") [Doc. 31-2], and filed a supplemental statement of facts [Doc. 31], to which plaintiff filed a response [Doc. 32].  BellSouth also filed a reply [Doc. 35].

## II.    Facts

Plaintiff, who identifies herself as a white-Hispanic female, was employed at BellSouth from 1993 until October 4, 2007, when she was terminated at age 47 for job

---

[1]Plaintiff's testimony during her second deposition is inconsistent with Dr. Koller's affidavit. During her second deposition, plaintiff testified that she could not recall, at her initial deposition, the details of BellSouth's discriminatory treatment due to fibromyalgia or "fibro fog" [Doc. 34, pp. 2-3].  Dr. Koller's affidavit contains no mention of plaintiff's fibromyalgia.

abandonment.[2]  During her employment, plaintiff held the positions of telephone operator, engineering clerk, and customer service associate/representative ("CSA") in BellSouth's government solutions group.  As a CSA, plaintiff's responsibilities included answering incoming telephone calls from customers, placing service orders, making account adjustments, and coordinating communications and service delivery within other departments.  Plaintiff's job was largely sedentary and required her to be on the telephone for 5 to 7 hours a day.  Throughout her employment with BellSouth, plaintiff alleges that she suffered from fibromyalgia, carpal tunnel, anxiety, and depression.

From 2005 to September 15, 2007, plaintiff's immediate supervisor was Janet Honeycutt ("Honeycutt").  Honeycutt, who retired from BellSouth on September 15, 2007, was not employed at BellSouth when plaintiff was terminated.  After Honeycutt's retirement, Mike Earle ("Earle") became plaintiff's immediate supervisor.  Earle remained plaintiff's supervisor until her termination.  Earle was supervised by Marcel Cyr ("Cyr"), the area manager and plaintiff's second supervisor.  Cyr was supervised by James Grelle ("Grelle"), the executive director and plaintiff's third supervisor.

Plaintiff testified at her initial deposition that she was aware of BellSouth's policies prohibiting discrimination and aware of the process at BellSouth by which employees could file complaints [Doc. 15-3, p. 12].  During her employment, plaintiff brought two formal

---

[2]Plaintiff's amended complaint alleges that plaintiff started working for BellSouth in 1986 [Doc. 12].  Plaintiff testified, however, at her initial deposition that she started working for Southwestern Bell in 1986, and BellSouth, the defendant in this case, in 1993 [Doc. 15-3, p. 14].

complaints to BellSouth's attention, neither of which, plaintiff testified at her initial deposition, were based on a protected classification such as disability, age, race, or sex [Doc. 15-1, ¶ 5; Doc. 15-3, pp. 46, 51-55; Doc. 16-1, ¶¶ 5-6]. Her first complaint, brought in 2000, was based on plaintiff's belief that she had received inadequate computer training. Her second complaint, brought in 2006, was based on Honeycutt telling plaintiff to wash off her cologne and not to wear it in the future or, if she continued to wear it, she would have to go home and take a bath [Doc. 16-1, ¶ 6; Doc. 15-3, pp. 54-56].

BellSouth has a four-step progressive disciplinary policy [Doc. 31, ¶ 45]. Plaintiff testified at her second deposition that she was familiar with this policy [Doc. 31-2, pp. 12, 27]. Under this policy, BellSouth must exhaust a four-step process before it can terminate an employee based on unsatisfactory attendance [Doc. 31, ¶ 45; Doc. 31-2, pp. 12, 27-28]. In September 2007 and again in July 2007, Honeycutt issued plaintiff two formal counseling entries due to plaintiff's unsatisfactory attendance [*Id.*, ¶¶ 9, 10]. These counseling entries were the first step in BellSouth's four-step process [Doc. 31, ¶ 45], and BellSouth did not issue plaintiff any more disciplinary steps related to unsatisfactory attendance [*Id.*; Doc. 31-2, pp. 27-28]. After plaintiff received the formal counseling entries, her labor union approved as leave several of her absences upon which the entries were based [Doc. 31, ¶ 46; Doc. 31-2, p. 13]. After the issuance of the entries, plaintiff received no further discipline for unsatisfactory attendance, and plaintiff and her labor union worked to credit any discrepancies in plaintiff's attendance record [Doc. 31, ¶ 47].

5

The events leading up to plaintiff's termination for job abandonment began at the end of August 2007. Plaintiff's last physical day at BellSouth was August 28, 2007 because she took 37 days of leave prior to her termination on October 4, 2007 [Doc. 34, p. 4]. On her last day, plaintiff alleges that she met with Honeycutt and a union representative to discuss her attendance records [Doc. 31-2, p. 13]. While plaintiff was on leave, Honeycutt retired and on September 15, 2007, Earle became plaintiff's immediate supervisor [Doc. 31, ¶ 36; Doc. 31-2, p. 7]. Between August 28, 2007 and October 4, 2007, plaintiff did not return to BellSouth and did not have any face-to-face communication or perform any work for Earle [Doc. 31, ¶ 37; Doc. 31-2, pp. 7, 10, 15].

While on leave, plaintiff applied for benefits under the BellSouth Short Term Disability Benefits Plan [Doc. 15-1, ¶ 14]. Sedgwick Claims Services, a third-party claims administrator, denied plaintiff's short term disability claim due to lack of medical documentation to support a disability [*Id.*; Doc. 31, ¶ 38; Doc. 15-4, p. 22; Doc. 31-2, pp. 7-9]. On September 24, 2007, pursuant to BellSouth's policy, Earle informed plaintiff by letter and telephone that she either had to appeal that decision, return to work by September 26, 2007, or be terminated for job abandonment [Doc. 15-1, ¶¶ 14, 16; Doc. 41, ¶¶ 38, 39; Doc. 31-2, pp. 8-10]. Plaintiff did not appeal the denial of short term disability leave and did not return to work. Plaintiff asserts that the reason she did not return to work was because she "couldn't function" and because she "was waiting for the [disability] forms to be sent to" her [Doc. 34, pp. 3-4; Doc. 31-2, p. 10].

6

BellSouth terminated plaintiff's employment, effective October 4, 2007, for job abandonment because plaintiff's failed to return to work after denial of her disability leave [Doc. 15-1, ¶ 18]. BellSouth asserts that Earle, Cyr, and Grelle were the BellSouth supervisors involved in the decision to terminate plaintiff [Doc. 31-3, ¶ 6], and that Honeycutt, who retired from BellSouth while plaintiff was on leave, was not involved in the termination decision [Doc. 31, ¶ 41]. BellSouth asserts that plaintiff's termination was based solely on job abandonment and not on the formal counseling entries or plaintiff's attendance record because BellSouth never issued plaintiff a second, third, or fourth discipline pursuant to BellSouth's four-step policy. Thus, BellSouth avers, it could not have terminated plaintiff for unsatisfactory attendance [Doc. 31, ¶¶ 45, 47; Doc. 31-2, pp. 27-28; Doc. 31-3, ¶ 7].

As previously noted, plaintiff's affidavit contains approximately fifty-two allegations of discriminatory treatment of plaintiff by BellSouth and its employees [Doc. 16-4]. In the affidavit, plaintiff repeats the allegation that Honeycutt and others treated her differently than "other employees (younger, male or healthy)" [*Id.*, ¶¶ A, B, D, E, F, N, P, Q, R, S]. Generally, plaintiff's allegations fall into two categories. The first category relates to plaintiff's interactions with Honeycutt and, to a lesser extent, her inactions with Brad Taylor ("Taylor"). For instance, plaintiff alleges that Honeycutt was verbally abusive, that she made comments relating to plaintiff's job attendance, that she manipulated plaintiff's leave, attendance, and personnel records, and that she refused to address issues relating to plaintiff's allegedly inadequate training on computers and telephones [*Id.*, ¶¶ T, V, W, CC, MM, NN, OO, SS]. Under Honeycutt's supervision, plaintiff alleges that she was required to work on

7

defective equipment because of an unspecified disability, that she "repeatedly requested assistance on [her] computer . . . [but] was consistently ignored even though other employees (younger, male or healthy) received assistance[,]" and that despite repeatedly requesting assistance on her computer, she was given the "run around" even though other employees received help [*Id.*, ¶¶ E, D, J]. In December 2006, plaintiff alleges that Honeycutt made a statement implying that because plaintiff is Hispanic, she should eat certain foods, such as burritos [*Id.*, ¶ X; Doc. 34, p. 12]. Plaintiff alleges that on April 26, 2006, Honeycutt told her that "if you can't do this job, then you have age issues," that Honeycutt chastised plaintiff for writing down notes [*Id.*, ¶¶ K, L; Doc. 34, p. 15], and that Honeycutt did not recognize plaintiff's service anniversary despite recognizing other employees' anniversary dates [*Id.*, ¶ O]. Plaintiff also alleges that she asked for an accommodation of being off telephones and for two computer screens due to an unspecified disability, but that Honeycutt and others refused to provide her the accommodation despite other employees having received similar accommodations. Finally, plaintiff alleges that Taylor was her supervisor, that he harassed her by threatening to make her life unpleasant if she complained, and that he came, uninvited, to her house. Plaintiff also alleges that Taylor was involved with Honeycutt in a conspiracy against her and that he sent plaintiff a threatening email [*Id.*, ¶¶ G, FF].[3]

---

[3]None of plaintiff's allegations against Taylor and his "threats" allege any protected classification. Furthermore, plaintiff testified during her second deposition that Taylor was a supervisor in a different department and that he was never her supervisor [Doc. 31-2, pp. 45-46]. There is also no evidence that Taylor was involved in the decision to terminate plaintiff.

8

The second category of allegations pertain to Earle and plaintiff's attendance record. BellSouth avers that in 2006 and 2007, plaintiff incurred leave under the Family and Medical Leave Act ("FMLA"), both paid and unpaid, and that in 2007, plaintiff had exhausted her leave entitlement under the FMLA [Doc. 15-1, ¶ 13].[4] Plaintiff asserts that because some of the absences for which she received the formal counseling entries were subsequently approved for leave, BellSouth should have corrected her attendance record to reflect the approved absences [Doc. 31-2, p. 13].[5] Plaintiff alleges that Honeycutt "manipulated" her attendance records and that, after Honeycutt retired, Earle refused to address the manipulated records [*Id.*, p. 11; Doc. 16-4, ¶¶ SS, TT]. Plaintiff has not alleged, however, that Earle changed or manipulated her records [Doc. 31-1, p. 16]. Plaintiff also alleges that in September 2007, while she was on leave prior to her termination, she requested Earle's assistance and called him numerous times for help in obtaining forms for claiming leave and to correct mistakes on her attendance records [Doc. 16-4, ¶ TT; Doc. 34, p. 4; Doc. 31-2, p. 124]. Plaintiff asserts that Earle never responded to her requests for assistance. Plaintiff also alleges that prior to her termination, she asked Earle for assistance in filing a workers compensation claim arising out of an injury in the "diagnosing stage" related to her carpal tunnel [Doc. 31-2, p. 9]. Plaintiff alleges that Earle told her she could file a workers

---

[4]These facts are taken from BellSouth's briefs. Plaintiff responded to these assertions by averring that she has no knowledge regarding the amount of leave she took in 2006 under the FMLA [Doc. 16-1, ¶ 13].

[5]BellSouth asserts that the formal counseling entries were valid when entered and had no bearing on the decision to terminate plaintiff.

compensation claim on her own, but that she was unable to do so, and that Earle knew this and that his refusal to assist her constituted discrimination based on an unspecified disability [Doc. 31-2, p. 15; Doc. 16-4, ¶ UU]. Plaintiff also alleges that she tried to contact Earle for help after she received the warning letter regarding possible termination due to job abandonment, but that he did not assist her [Doc. 34, p. 3; Doc. 31-2, p. 9]. Finally, plaintiff alleges that Earle had a motive to get rid of her because he wanted to prevent Kerry Hood ("Hood"), whom plaintiff asserts was a male with less seniority than her who was already in Earle's group, from being displaced [Doc. 16-4, ¶ ZZ].

On July 30, 2008, plaintiff filed her first charge of discrimination with the Equal Employment Opportunity Commission (the "first EEOC charge"), alleging charges of age, race, and sex-based discrimination, and charges for retaliation and hostile work environment [Doc. 12, ¶ 5]. On April 21, 2009, the EEOC issued plaintiff a right to sue letter for her first EEOC charge [*Id.*, ¶ 17]. Plaintiff then filed her initial complaint [Doc. 1], which includes claims for age, race, and sex-based discrimination under the ADEA and Title VII, and claims for retaliation and hostile work environment. On June 12, 2009, plaintiff filed her second charge of discrimination with the EEOC (the "second EEOC charge") and the Tennessee Human Rights Commission (the "THRC"), claiming failure to accommodate and wrongful termination based on a disability [*Id.*, ¶ 8; Doc. 15-1, ¶ 22]. The EEOC dismissed plaintiff's second EEOC charge on grounds that it was untimely [*Id.*, ¶ 23]. Plaintiff then filed her amended complaint [Doc. 12], which includes claims for disability, age, race, and sex-based

discrimination under the ADA, the ADEA, and Title VII, and claims for retaliation and hostile work environment.

## III. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

11

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## IV.    Analysis

Plaintiff has alleged disability, age, race, and sex-based discrimination claims in violation of the ADA, the ADEA, and Title VII. The ADA prohibits covered employers from discriminating against qualified individuals with a disability. *See* 42 U.S.C. § 12101. The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a). Title VII makes it unlawful "for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1).

12

Claims under the ADA, the ADEA, and Title VII may each be established through direct or circumstantial evidence. *See, e.g.*, *Hedrick v. W. Reserve Care Cntr.*, 355 F.3d 444, 453 (6th Cir. 2004) (claims under the ADA); *Rowan v. Lockheed Martin Energy Sys, Inc.*, 360 F.3d 544, 547-48 (6th Cir. 2004) (claims under the ADEA); *Dicarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004) (claims under Title VII). Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)). Plaintiffs who cannot provide direct evidence of discrimination may still base their claims on circumstantial evidence. Claims based on circumstantial evidence under the ADA, the ADEA, and Title VII are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See, e.g., Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) (ADA); *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410-11 (6th Cir. 2008) (ADEA); *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007) (Title VII). Under the *McDonnell Douglas* framework, the burden is on the plaintiff to first establish a prima facie case under the relevant statute. 411 U.S. at 802.

While the parties in this case have focused their arguments on whether plaintiff has established a prima facie case as to any of her claims, upon the Court's review of plaintiff's allegations in the amended complaint, her affidavit, and in her briefs in opposition to BellSouth's motion for summary judgment, the Court finds that plaintiff has not presented

13

direct evidence requiring the conclusion that discrimination was at least a motivating factor in her termination. Accordingly, the Court will review plaintiff's claims pursuant to the burden-shifting framework articulated in *McDonnell Douglas*.

Generally, for claims of discrimination based on disability, age, race, and sex, a plaintiff establishes a prima facie case by showing, *inter alia*, that (1) the plaintiff was a member of a protected class; (2) the plaintiff was discharged; (3) the plaintiff was qualified for the position; and (4) the plaintiff was replaced by a person outside the protected class. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). The plaintiff can also satisfy the fourth prong by showing that the plaintiff was "treated differently from similarly situated employees outside the protected class." *Martin*, 548 F.3d at 410 (quoting *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004)). *See Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007) (prima facie case under the ADA); *Martin*, 548 F.3d at 410-13 (prima facie case under the ADEA); *Vincent v. Brewer Co.,* 514 F.3d 489, 494 (6th Cir. 2007) (prima facie case under Title VII). Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1113-14 (6th Cir. 2001). If the defendant makes the appropriate showing, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason was a pretext for discrimination. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-55 (1981).

BellSouth asserts that plaintiff cannot establish a prima facie case for any of her claims of discrimination and, even if plaintiff has proved a prima facie case as to any of her

14

claims, BellSouth has articulated a legitimate, nondiscriminatory reason for its employment action—namely, that plaintiff was terminated for job abandonment because she failed to return to work after she was denied short term disability leave—and plaintiff has not shown that this reason was pretextual.

### A.    Plaintiff's ADA Claim

BellSouth terminated plaintiff's employment on October 4, 2007.  Plaintiff filed her first EEOC charge on August 15, 2008 [Doc. 15-4].  The first EEOC charge included charges of age, race, and sex-based discrimination, retaliation, and hostile work environment [*Id.*]. On July 7, 2009, after plaintiff filed her initial complaint and eleven months after she was terminated, plaintiff filed a second EEOC charge for failure to accommodate a disability and wrongful termination based on a disability [Doc. 15-3, p. 16; Doc. 15-4, pp. 3-4].  The EEOC dismissed plaintiff's second EEOC charge on grounds that it was untimely [Doc. 15-3, p. 16; Doc. 15-4, pp. 3-4].

Tennessee is a deferral state, which means the statute of limitations for filing an employment discrimination charge with the EEOC or the THRC is 300 days after the alleged unlawful employment action occurred.  42 U.S.C.A. § 2000e-5(e)(1); *Tartt v. City of Clarksville*, 149 F. App'x 456, 460 (6th Cir. 2005) (holding that "Tennessee is a 'deferral state' for purposes of the federal discrimination statutes" and that a plaintiff's EEOC charge must be filed "within 300 days of the alleged discrimination") (citing *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 375-76 (6th Cir. 2002) and *Jackson v. Richards Med. Co.*, 961 F.2d 575, 578-79 (6th Cir. 1992)); *see also Parry v. Mohawak Motors, Inc.*, 236 F.3d 299,

15

308 (6th Cir. 2000) (stating that Title VII exhaustion requirements are applicable to ADA claims). The U.S. Court of Appeals for the Sixth Circuit has stated that although "the 300-day bar is not jurisdictional, it does have the effect of a statute of limitations[.]" *Weigel*, 302 F.3d at 375-76. Furthermore, "[t]hese time limits . . . are subject to waiver, estoppel, and equitable tolling." *Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 351 (6th Cir. 2002) (agreeing with the district court's determination that a plaintiff's Title VII and ADA claims were barred by the statute of limitations). However, federal courts apply equitable tolling sparingly and a plaintiff must demonstrate facts showing diligence in pursuit of the particular claim. *Id*. (citations omitted).

BellSouth contends that because plaintiff did not file her second EEOC charge within 300 days after her termination, plaintiff's ADA claim is time-barred. Plaintiff acknowledges that her second EEOC charge was filed outside the 300-day limitations period, but argues that she intended to include the disability charge in her first EEOC charge, but for some "unknown" reason, it was not included. Plaintiff also asserts that she was not represented by counsel and that the EEOC refused to let her correct her first EEOC charge to include a charge of discrimination based on disability.

The EEOC charge sheet and the factual basis for plaintiff's first EEOC charge do not contain a single allegation of discrimination based on disability [Doc. 15-4, pp. 6-10]. In addition, on her first EEOC charge, plaintiff did not mark the box labeled "disability" under the section "DISCRIMINATION BASED ON," but marked other boxes which are labeled race, retaliation, sex, and "other," under which plaintiff wrote in "hostile work environment"

16

[Doc. 15-1, p. 5]. Marking these boxes and not the "disability" box, along with the lack of factual allegations pertaining to any disability or discrimination based on disability in the factual basis of the first EEOC charge, indicates to the Court that plaintiff was aware of the charges she wanted to bring when she filed her first EEOC charge, and that a disability charge was not one of them. Furthermore, while plaintiff might not have been represented by counsel when she filed her first EEOC charge, she was not without the benefit of any guidance because she acknowledged at her initial deposition that she had consulted with an EEOC representative before filing her first EEOC charge [Doc. 15-3, p. 17]. Finally, when plaintiff contacted the EEOC about the "error" she made in her first EEOC charge, she testified at her initial deposition that this "error" was checking the box labeled "race" instead of the box labeled "age," an error that does not pertain to plaintiff's assertion that she knew she made an error by not making a charge of discrimination based on disability [*Id.*; Doc. 15-4, pp. 11-12]. Accordingly, because plaintiff's first EEOC charge does not contain facts that reasonably could have led to a charge of discrimination based on disability, and because plaintiff has provided no evidence that she intended to bring a charge of discrimination based on disability, besides her own assertion that she intended to do so, the Court finds that plaintiff's ADA claim is time-barred because she did not file her disability charge with the EEOC within 300 days of the alleged discrimination. *See Tartt*, 149 F. App'x at 460.

Even if plaintiff's ADA claim was not time-barred, her claim would still fail because she has not shown that she has a disability, a record of a disability, or that BellSouth regarded her as disabled. A court is required to make an individualized inquiry into whether a plaintiff

17

is disabled. *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598 (6th Cir. 2002). A plaintiff can establish a disability by showing: (1) a physical or mental impairment that substantially limits one or more of the plaintiff's major life activities; (2) a record of such impairment; or (3) that the plaintiff was regarded by an employer as having such an impairment. *Gruener v. Ohio Cas. Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008) (citing *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999) (quotations omitted)); *see also* 42 U.S.C. §§ 12102(2)(A)-(C) (defining disability under the ADA); 29 C.F.R. § 1630.2(i), (j) (same).

Here, plaintiff has not alleged what disability or medical condition she has that substantially limits a major life activity. In her affidavit and during her second deposition, plaintiff discusses her fibromyalgia, her "mental deficiencies," and her carpal tunnel as medical conditions affecting her health. She also states that her fibromyalgia affects her cognitive functions and made her unable to recall the details of her allegations of discrimination during her initial deposition [Doc. 34, p. 3]. Plaintiff's pleadings, however, do not contain either allegation or evidence that her fibromyalgia or any other medical condition substantially limited one or more of her major life activities. While plaintiff asserts in her amended complaint that she is a qualified individual with a disability as that term is defined under the ADA, it is telling that nowhere in plaintiff's amended complaint or her affidavit does she state what her disability is, that she has a record of a disability, or that BellSouth regarded her as disabled. Rather, plaintiff seems to rely on only the repeated allegations of her affidavit that BellSouth's conduct was "because of [her] disability" and that "younger, male or healthy" individuals were treated differently. From these allegations

18

alone, the Court simply cannot determine whether plaintiff's medical conditions, either separately or in combination, constitute a disability that substantially limits a major life activity as contemplated by the ADA. *See, e.g., Cotter*, 287 F.3d at 598 (noting that, apart from perfunctory statements that colitis substantially limited the plaintiff's ability to perform manual tasks such as lifting, bending, and standing, the plaintiff offered no evidence from which a reasonable juror could infer that his digestive aliment substantially limited major life activities). Accordingly, because the Court finds that plaintiff has also failed to show, or even allege, that she has a disability under any of the tests for establishing a disability, *see Gruener*, 510 F.3d at 664, the Court concludes that plaintiff has failed to state a prima facie case for her ADA claim.

### B.     Similarly-Situated Comparators

In order to prove a prima facie case of disability, age, race, or sex-based discrimination under the ADA, the ADEA, and Title VII, a plaintiff must be able to show that she was replaced by a person outside the protected classification or identify at least one comparable employee outside the protected classification who was similarly-situated in all relevant respects, but who nonetheless received more favorable treatment. Here, plaintiff has not argued that she was replaced by a person outside a protected classification and thus, the Court will focus on the similarly-situated inquiry.

A plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated." Rather, a plaintiff need only show that they are similar in all relevant aspects. *Ercegovich v.*

19

*Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002). One court has stated that in order to deem employees "similarly-situated," a court should "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee" as opposed to assuming that only specific factors must be present for an employee to be found similarly-situated. *Gibson v. Shelly Co.*, 314 F. Appx. 760, 771 (6th Cir. 2008) (noting that comparable employees do not necessarily have to have dealt with the same supervisor or be subject to the exact same standards). For instance, in *Mitchell*, a case involving allegations of differential disciplinary action, a panel of the Sixth Circuit listed the following as relevant considerations:

> [That] the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

964 F.2d at 583.

Plaintiff has alleged a number of BellSouth employees whom she asserts were "younger, male or healthy" and who were treated differently or more favorably than plaintiff.[6] However, after perusing plaintiff's affidavit, her depositions, and her response briefs, the Court has found no genuine issue of fact as to whether these individuals were

---

[6]The individuals named in plaintiff's response include, but are not limited to Todd Smith, Chris Brown, Penny Henson, Brandy McMahon, Toni Raines, Rachel Phillips, Debbie Matlock, David Price, Kerry Hood, and an individual with the last name "Love."

similarly-situated to plaintiff in the relevant aspects of their employment or in regard to their conduct. Rather, plaintiff relies almost solely on an allegation she repeats throughout her affidavit, that "younger, male or healthy" employees were treated differently or more favorably. Plaintiff does not allege, let alone provide evidence of, how these allegedly similarly-situated employees were similar in the relevant aspects of their employment to plaintiff or what type of similar conduct these individuals and plaintiff engaged in and the disparate treatment plaintiff received.

In her affidavit, plaintiff repeatedly avers that she was treated differently than "younger, male or healthy employees" [Doc. 16-4, ¶ TT]. Plaintiff has not, however, identified any employee who went to Earle with a similar attendance or leave issue and who was treated differently than plaintiff [Doc. 31-2, p. 14]. Plaintiff also cannot identify any employee who asked Earle to file a workers compensation on his or her behalf and who received a different response than plaintiff [*Id.*, pp. 17-18]. Furthermore, plaintiff cannot identify any employee in her same position who was granted an accommodation and allowed not to work on the telephones while maintaining the same position [Doc. 15-3, p. 26]. This lack of evidence of a similarly-situated comparator in regard to any of her claims is insufficient to establish plaintiff's burden of proving her prima facie cases. Simply averring that younger, male, or healthy employees were treated differently is not enough to raise a genuine issue of material fact to defeat summary judgment, as the Court is left to guess which allegations of discriminatory conduct and which allegations of disparate treatment correlate with each alleged similarly-situated employee.

After reviewing the record of this case, the only two employees plaintiff has identified that engaged in similar conduct as plaintiff in regard to the circumstances surrounding plaintiff's termination are Debbie Matlock ("Matlock") and Rachel Phillips ("Phillips").[7] At plaintiff's second deposition, she testified that Matlock and Phillips failed to return to work after denial or expiration of their short term disability benefits and that she "suspected" they were treated differently [Doc. 34, pp. 18-19; Doc. 31-2, pp. 24-26]. Plaintiff also testified that Phillips was "maybe ten years" younger and that both Phillips and Matlock were white, but plaintiff was unsure as to whether they were Hispanic [*Id.*]. Notwithstanding this testimony, plaintiff also testified that she did not know or could not recall whether Matlock or Phillips ever had short term disability leave approved, whether such leave was ever extended to Matlock or Phillips, whether Matlock or Phillips reported back to work following expiration of their leave, whether Matlock or Phillips made arrangements to return to work, or whether Matlock or Phillips took another type of leave or a vacation to extend their leave [*Id.*]. The following exchange is representative of plaintiff's testimony during her second deposition regarding Matlock or Phillips:

---

[7]Plaintiff asserts for the first time in her response to BellSouth's supplemental memorandum that Chris Brown ("Brown"), whom plaintiff asserts is a younger male employee, failed to return to work following medical leave and, unlike plaintiff, was not terminated [Doc. 34, p. 19 (citing Doc. 31-2, p. 37)]. This assertion, however, is a misstatement of plaintiff's deposition testimony. Plaintiff testified at her second deposition that she was not contending that Brown failed to return to work after being instructed to do so after expiration of short term disability leave [Doc. 31-2, p. 37]. Rather, plaintiff only mentioned Brown as a person she speculates received assistance from Earle, Cyr, or Grelle in obtaining disability benefits [*Id.*, pp. 36-37]. While plaintiff claims in her responsive pleading that she did not receive similar assistance from BellSouth, she testified to the contrary during her second deposition and was unable to identify whether Brown or any other employee received assistance or benefits that were different than those plaintiff received [*Id.*].

22

Attorney: All right. And I don't want to belabor the point, but we just want to be clear. When it comes to these two people [Matlock and Phillips], you know that they were out on short-term disability, right?, [sic] and they came back to work for [BellSouth] at some point?

Plaintiff: Yes.

Attorney: And as far as any failure [by Matlock and Phillips] to return to work as instructed, you don't have any knowledge about that?

Plaintiff: I don't recall that.

[Doc. 31-2, p. 25].

Plaintiff's testimony during both her initial and her second depositions demonstrates not only that plaintiff cannot recall or has no knowledge of the facts surrounding the allegedly similar conduct of Matlock and Phillips, it also demonstrates that plaintiff's allegations that these employees were similarly-situated to herself are based on unsubstantiated personal belief and speculation. In addition, while plaintiff testified that she was told by another individual that Matlock and Phillips engaged in similar conduct, plaintiff has not provided the Court with the name or the identity of this individual. The Sixth Circuit has recognized that such conclusory allegations, subjective beliefs, and inadmissible hearsay do not create genuine issues of material fact that may be used to defeat a motion for summary judgement. *See, e.g., Mitchell*, 964 F.2d at 585 (noting that a plaintiff's affidavit consisted of "nothing more than rumors, conclusory allegations, and subjective beliefs which are wholly insufficient to establish a claim of discrimination as a matter of law"). Accordingly, the Court does not find Matlock or Phillips to be similarly-situated to plaintiff in regard to

23

her discrimination claim based upon disability or BellSouth's treatment of plaintiff regarding short term disability leave.

Furthermore, neither Matlock nor Phillips are valid comparators in regard to plaintiff's claim for sex-based discrimination because they are both female [Doc. 31-2, pp. 23-24]. Matlock is older than plaintiff, therefore she is not a valid comparator for purposes of plaintiff's age-based discrimination claim [*Id.*, p. 24]. Plaintiff also describes herself as a white Hispanic, describes both Matlock and Phillips as white [*Id.*, p. 25], and testified that she does not know whether Matlock or Phillips are Hispanic, therefore the Court also finds that plaintiff has not provided evidence of a genuine issue of fact that either of these two employees are valid comparators for plaintiff's race-based discrimination claim [*Id.*]. In sum, any use of Matlock and Phillips as similarly-situated comparators for plaintiff's sex, age, and race-based discrimination claims fails and the Court finds that plaintiff has not met her burden of proving a prima facie case in regard to any of these claims.

### C.     Retaliation

Plaintiff has also alleged a claim for retaliation. A claim for retaliation may be based upon direct evidence or circumstantial evidence under the *McDonnell Douglas* framework. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir.2003) ("In an action under Title VII, the plaintiff may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a prima facie case under the *McDonnell Douglas* framework."). Plaintiff has not indicated what protected activity she was allegedly engaged in when she was allegedly retaliated against. Nevertheless, the framework for establishing a prima facie case

24

for retaliation based upon an activity protected under the ADA, the ADEA, and Title VII is the same. In proving a prima facie case, a plaintiff must show that (1) the plaintiff was engaged in an activity protected by the relevant statute; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) there was a casual connection between the protected activity and the adverse employment action. *See, e.g., Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 736 (6th Cir. 2006); *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 552-53 (6th Cir. 2002). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. *Ford*, 305 F.3d at 553. The plaintiff must then demonstrate that the defendant's proffered reason was false. *Id.*

BellSouth asserts that plaintiff has not proven a prima facie case for retaliation and, even if she has, it has articulated a legitimate, nondiscriminatory reason for her termination. Plaintiff asserts that she has established a prima facie case for retaliation and alleges the following facts in support of her prima facie case: (1) she was terminated because she brought Honeycutt's manipulation of her attendance records to BellSouth's attention [Doc. 31-2, p. 14]; (2) she was retaliated against because Earle refused to file a workers compensation claim on her behalf [*Id.*, p. 31]; and (3) she was terminated because Earle knew she had filed or was in the process of filing a grievance for hostile work environment and falsification of records [*Id.*, p. 28]. Plaintiff's testimony at her second deposition is the only evidence she has presented in support of this claim.

Viewing the evidence in the light most favorable to plaintiff, the Court concludes that plaintiff has not met her burden of proving a prima facie case of retaliation under any of the relevant statutes. Assuming Honeycutt manipulated plaintiff's attendance records, reporting such manipulation to BellSouth does not fall within protected activity under the ADA, the ADEA, or Title VII because this conduct is not based upon a protected classification. Furthermore, BellSouth has asserted that plaintiff's records were subsequently corrected, that her formal counseling entries were valid when issued, and that her attendance had nothing to do with her termination. Plaintiff has presented no evidence to rebut these assertions.

In addition, assuming Earle refused to file a workers' compensation claim on plaintiff's behalf, plaintiff testified that she does not know of any other employee who asked Earle to file a claim on his or her behalf and who received a different response [Doc. 31-2, p. 15]. Furthermore, it is unclear that telling an employee they must file their own claim instead of filing it for the employee constitutes an adverse employment action for purposes of a retaliation claim. Plaintiff has also offered no evidence of the circumstances surrounding the grievance she allegedly filed or intended to file (based upon plaintiff's affidavits and her response briefs, it is unclear which), including whether the grievance was based on her alleged disability, her age, her race, or her sex. Finally, the record of this case shows that the two complaints plaintiff filed with BellSouth were not based on any protected classification.

In sum, the Court cannot conclude that plaintiff has provided evidence of a genuine issue of fact in regard to her claim for retaliation.

**D.    Pretext**

Even if plaintiff has established a prima facie case for any of her claims for discrimination or retaliation, BellSouth asserts that it has satisfied the second step of the *McDonnell Douglas* test by articulating and showing that plaintiff was terminated for a legitimate, nondiscriminatory reason—job abandonment for failure to return to work after a denial of short term disability leave.    Plaintiff has not argued that this reason was illegitimate or nondiscriminatory.    Rather, plaintiff argues that this reason is pretext for discrimination "because the Plaintiff did everything in her power to communicate with [BellSouth] relative to her return to work." [Doc. 34, pp. 23-24].

To establish that a defendant's proffered reason is pretext, a plaintiff may show one of the following: (1) the reason has no basis in fact; (2) the reason did not actually motivate the challenged conduct; or (3) the reason was insufficient to warrant the challenged conduct. *Wexler*, 317 F.3d at 576 (internal quotations and citation omitted).    The first and third showings of pretext consist of evidence attacking the credibility of the employer's proffered motivation for the termination, such as evidence that the proffered reason for the plaintiff's discharge never happened, that the reasons were factually false, or that other employees outside the protected class were not terminated even though they engaged in substantially identical conduct as that which the employer contends motivated the plaintiff's discharge. *See Jones*, 488 F.3d at 406.    In making the second showing, a plaintiff "admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal."    *Mischer v. Erie Metro Hous. Auth.*, 168 F. App'x 709, 715 (6th

Cir. 2006) (emphasis in original). In other words, instead of disputing the facts, the "plaintiff attempts to indict the credibility of his employer's explanation" and show "that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup" for the illegal discrimination. *Id.*

It is undisputed that Honeycutt retired from BellSouth while plaintiff was on leave and undisputed that Honeycutt was not plaintiff's supervisor when plaintiff was terminated on October 4, 2007 for job abandonment [Doc. 15-3, p. 24; Doc. 31-3, p. 7; Doc. 31-3, ¶¶ 3, 5, 6]. It is also undisputed that Earle became plaintiff's supervisor on September 15, 2007, that plaintiff reported to Earle until her termination, that plaintiff did not come into the office during her leave, and that she did not have any face-to-face interactions or communication with Earle [Doc. 31-2, pp. 7-8, 10, 14; Doc. 31-3, ¶¶ 3, 5, 6]. Furthermore, plaintiff has not disputed that she received a warning letter from Earle about being terminated due to job abandonment, has not disputed that she did not appeal her short term disability leave denial, and has not disputed that she did not return to work after receiving the letter [Doc. 34, p. 20]. In addition, at her initial deposition, plaintiff testified that she could not recall whether Earle, Cyr, or Grelle engaged in any discriminatory conduct based upon disability, age, race, or sex, and plaintiff's amended complaint also does not contain any allegation of wrongful conduct by Earle, Cyr, or Grelle [Doc. 12]. Finally, during her second deposition, plaintiff confirmed that she was not aware of anything Cyr or Grelle said or did towards her that was based on disability, age, race, or sex [Doc. 31-2, pp. 25-26, 31], plaintiff acknowledged not communicating with Cyr or Grelle, and plaintiff stated that she only suspected Cyr was aware

28

of her communications with Earle regarding her short term disability leave [*Id.*].[8]  Given the foregoing, the Court finds that plaintiff has provided no evidence disputing BellSouth's assertion that Earle, Cyr, and Grelle made the decision to terminate her for job abandonment, provided no evidence that this reason had no basis in fact, provided no evidence that this reason did not actually motivate the challenged conduct, and provided no evidence that this reason was insufficient to warrant a termination.

While plaintiff asserted for the first time in her affidavit and during her second deposition that Earle "refused to address" her attendance record which was "manipulated" by Honeycutt, she does not contend that Earle himself manipulated her attendance records [Doc. 16-4, ¶¶ SS, TT; Doc. 31-2, pp. 11, 31].  Moreover, any allegation that Earle refused to correct her attendance records after the records were allegedly manipulated does not establish a genuine issue of fact in regard to whether BellSouth's reason for plaintiff's termination was pretextual because plaintiff was terminated for job abandonment, not unsatisfactory attendance.  As BellSouth points out, plaintiff could not have been terminated for unsatisfactory attendance because, as plaintiff acknowledges, she had not received the requisite number of disciplinary steps required under BellSouth's policy to terminate an employee based on unsatisfactory attendance.[9]

---

[8]Plaintiff has given no evidentiary support for her statement that Cyr "must have known what [Earle] was doing" [Doc. 34, p. 22].

[9]Plaintiff has contended, with no supporting evidence beyond her personal belief, that Honeycutt "set the stage" for Earle to terminate her and that she "suspects" Honeycutt participated in the termination decision [Doc. 34, p. 22; Doc. 31-2, p. 27].  However, such speculation and conjecture cannot be used to defeat summary judgment.  *See Mitchell*, 964 F.2d at 585.

Given the foregoing, the Court finds that plaintiff has not presented a genuine issue of fact that Earle, Cyr, and Grelle were not the decision makers in regard to her termination because plaintiff has not presented any evidence, other than her unsubstantiated personal belief, that Honeycutt was involved in that decision [Doc. 15-3, p. 24; Doc. 31-2, pp. 7, 26-27; Doc. 31-3, ¶ 6]. Accordingly, because Honeycutt was retired at the time of plaintiff's termination, because plaintiff's allegations of Honeycutt's discriminatory behavior are unrelated to the decisional process, and because plaintiff has presented no evidence that Honeycutt was involved in the decision to terminate her, the Court does not find plaintiff to have established pretext. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (stating that "[S]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [can not] suffice to satisfy the plaintiff's burden . . . " of demonstrating discriminatory animus) (quoting *Price v. Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) (alterations in original)); *see also Rowan*, 360 F.3d at 550. Furthermore, plaintiff's attempts to bootstrap her allegations of Honeycutt's misconduct to Earle and his refusal to address her attendance records does not establish pretext because it does not show that BellSouth's stated reason for her termination was false. Furthermore, in regard to plaintiff's allegations about Hood, BellSouth asserts that Hood's position was not displaced when plaintiff was added to Earle's group [Doc. 31-3, ¶¶ 8-9]. BellSouth also points out that at plaintiff's second deposition, she testified that she had no knowledge whether adding her to Earle's group did anything to displace Hood and no knowledge that Earle's group was ever downsized, prior or after to plaintiff's termination

[Doc. 31-2, pp. 20-23]. Plaintiff has presented nothing to rebut this evidence. Finally, plaintiff's argument that Earle terminated her to protect Kerry Hood, a male with less seniority, is based upon pure speculation about what plaintiff "heard" and is insufficient to defeat summary judgment [*Id.*, pp. 19-20]

### E. Hostile Work Environment

Plaintiff has also claims that BellSouth created a hostile work environment in violation of Title VII by harassing plaintiff for performance of her job responsibilities and by referring to plaintiff in racially derogatory terms [Doc. 16-2, pp. 19-20]. Because harassment based upon performance of job responsibilities is not protected under Title VII, the Court's analysis focuses only on plaintiff's allegations of harassment because of racially derogatory comments.

In order to establish a prima facie case of hostile work environment based on race under Title VII, a plaintiff must show the following: (1) the plaintiff is a member of a protected class; (2) the plaintiff was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment had the effect of unreasonably interfering with the plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability. *Newman v. Fed. Exp. Corp.*, 266 F.3d 401, 405 (6th Cir. 2001). In determining whether there was a hostile work environment, the Court is instructed to look at the totality of the circumstances. *Id.* Specifically, the Court is to "consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

31

unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The U.S. Supreme Court has also held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). "Finally, the work environment must be both objectively and subjectively offensive." *Id.* (citing *Harris*, 510 U.S. at 21-22).

Even assuming plaintiff has satisfied the first, second, and third prongs of a prima facie case, plaintiff's claim for hostile work environment fails because she cannot meet the fourth prong. In her amended complaint, plaintiff avers, without giving any specific examples, that she was treated differently than her "Caucasian" counterparts, that they were allowed to perform other, unspecified job duties, and that employees made remarks to plaintiff like "are you going to bring burritos in for breakfast" [Doc. 12, ¶¶ 12, 20, 30]. Plaintiff's affidavit contains the following allegation of harassment based on race, "[i]n December 2006, [Honeycutt] implied that because I was Hispanic decent, that I should eat particular foods." [Doc. 16-4, ¶ X; Doc. 31-2, pp. 57-58]. Construing these comments regarding plaintiff's race in the most favorable light towards plaintiff's claim for retaliation, such comments do not rise to the level required for a prima facie claim of hostile work environment. The conduct described by plaintiff—being treated "differently" and the comments related to food—are not the type of harassment that unreasonably interferes with an individual's work performance by creating an intimidating, hostile, or offensive work

32

environment. Accordingly, the Court finds that plaintiff has failed to establish a prima facie case for her claim of hostile work environment and this claim will also be dismissed.

## V. Conclusion

For the reasons set forth above, plaintiff has not set forth direct or circumstantial evidence which, taken collectively and in the light most favorable to plaintiff, demonstrates a prima facie case as to any of her discrimination claims or her claims for retaliation and hostile work environment. Moreover, BellSouth has set forth a legitimate, nondiscriminatory reason for plaintiff's termination and plaintiff has not provided evidence that this reason was pretextual. Accordingly, BellSouth's Motion for Summary Judgment [Doc. 15] will be **GRANTED**, and plaintiff's claims will be **DISMISSED** in their entirety. The Clerk of Court will be **DIRECTED** to close this case. An appropriate order will be entered.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE